# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AC PRINCE,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs-Pro se* | : | |
| | : | **NO. 16-6179** |
| **v.** | : | |
| | : | |
| **JAMES MALAUGH,** *et al.* | : | |
| *Defendants-Pro se* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    JANUARY 11, 2019

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiffs AC Prince and P. Michelle Prince ("Plaintiffs") filed this civil action against Defendants James Malaugh and Elizabeth Malaugh ("Defendants"), Plaintiffs' former landlords. In their complaint Plaintiffs assert claims of racial discrimination and retaliation under the Fair Housing Act (the "FHA"), Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§3601-3619. Before this Court is Defendants' motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 27], which Plaintiffs have opposed. [ECF 30, 35].[1] The issues raised by the parties, both proceeding *pro se*, have been fully briefed and are ripe for disposition. For the reasons set forth below, the motion is granted, and judgment is entered in favor of Defendants.

---

[1]     This Court has also considered Defendants' supplemental brief, [ECF 37], and Plaintiff's *sur-reply*, [ECF 41].

**BACKGROUND**[2]

Plaintiffs allege that Defendants discriminated against them on the basis of their race when Defendants refused to renew Plaintiffs' lease and/or sell the underlying property to Plaintiffs, thus violating the FHA. Discovery ensued and was completed. Thereafter, Defendants filed the underlying motion for summary judgment. When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The relevant facts are summarized as follows:

> Sometime in 2011, Defendants (who are Caucasians), owners of a single-family home located at 107 Bailey Drive, North Wales, Pennsylvania (the "Property"), relocated to Virginia for work. Unable to sell the Property, in August 2012, Defendants (as landlords) entered into a one-year lease agreement with Plaintiffs (as tenants) (who are African Americans) for the Property. The lease automatically renewed for another one-year term unless Defendants provided written notice of their decision to not renew the lease. Defendants understood through their realtor that Plaintiffs were interested in potentially purchasing the Property at the end of the one-year lease term.[3]

> Over the course of the tenancy, Defendants asked Plaintiffs whether they were interested in purchasing the Property, as originally indicated by Plaintiffs when they first entered the lease. Each time, Plaintiffs repeated their interest, but advised that they were not yet in position to make a purchase offer. For example, In May 2014, Plaintiffs replied that they needed another one-year lease in order to save enough money for a down payment. In September 2, 2014, Plaintiffs again indicated that they were not yet in financial position to purchase the Property, but suggested they might be sometime later in 2015. By text message dated January 15, 2015, Defendants advised Plaintiffs that their lease included a contingency that required Defendants to pay their realtor a commission in the event Plaintiffs purchased the Property. Defendants then advised Plaintiffs that they either

---

[2]    The procedural and factual histories are known to the parties. Therefore, only the facts pertinent to the underlying motion will be discussed. These facts are primarily taken from the parties' respective briefs, sworn pleadings, and supplied exhibits. To the extent that the facts are disputed, such disputes are noted, and if material, pursuant to Rule 56, they will be construed in Plaintiffs' favor.

[3]    Though not fully described in either party's filings or apparent from the record evidence submitted by Defendants, it appears that the one-year lease was renewed through August 2016.

needed a purchase "contract" from Plaintiffs, or Defendants would need to put the Property on the market for sale. At that time, according to Defendants' text message, homes in the neighborhood had recently sold for over $700,000, and Zillow.com valued the Property at $706,000. Plaintiffs responded that they were not prepared at that time to make an offer. Plaintiffs never made an offer to purchase the Property.

Sometime prior to November 2015, Plaintiffs failed to fully pay their rent for multiple months. As a result, on November 24, 2015, a judgment was entered against Plaintiffs and in favor of Defendants in the Court of Common Pleas of Montgomery County in the amount of $6,042.10, consisting of $5,700 in rental arrears. As a result of the judgment, Defendants had the legal option of taking possession of the Property or allowing Plaintiffs ten days to satisfy the judgment and permitting them to remain in the Property for the remaining term of the lease. Instead, Defendants agreed to give Plaintiffs more than two months to satisfy the judgment and to allow Plaintiffs to remain in the Property for the remainder of the lease. Plaintiffs assert in their complaint that on that same day, Defendant Elizabeth Malaugh stated "They will not be able to pay. They will not be able to stay," while rubbing her forearm and referring to Plaintiffs' ethnicity.[4]

Plaintiffs did not comply with the parties' agreement and failed to satisfy the judgment. Thereafter, Defendants were granted an Order of Possession on February 16, 2016, which was served on Plaintiffs. On February 22, 2016, Plaintiffs filed a petition to appeal the judgment in the Court of Common Pleas of Montgomery County and, as required to perfect the appeal, paid the judgment. Notably, Defendants ultimately prevailed in the state court proceedings.

Sometime thereafter, Defendants decided to end the lease with Plaintiffs at the end of its then-current term. On or about June 24, 2016, Defendants provided Plaintiffs written notice that the lease would not be renewed at the end of its current term, August 31, 2016. According to Plaintiffs' complaint, in July 2016, Plaintiffs sent four "forms of communication to [Defendants] requesting we revisit lease-purchase agreement," but received no response from Defendants.[5]

---

[4]    Though Plaintiffs have repeatedly made reference to this purported discriminatory statement throughout these proceedings by way of their complaint and other filings, they have not submitted any record evidence of this statement by way of, for example, affidavit or deposition testimony. Defendants dispute having made any such statement.

[5]    In their opposition filings, Plaintiffs make reference to communications they purportedly mailed to Defendants in July of 2016, which constitute a "bona fide, legitimate offer to transition from lease to purchase." Despite having filed two opposition briefs and a sur-reply brief, Plaintiffs have failed to present any record evidence of such an offer as required by Rule 56 to meet their summary judgment burden. Notably, in their complaint, Plaintiffs allege only that they sent four forms of communication to Defendants in July 2016 "requesting we revisit lease-purchase agreement."

On August 30, 2016, Plaintiffs filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), which alleged housing discrimination and harassment. Defendants did not receive notice of this complaint until sometime in early September 2016.[6] On August 31, 2016, Defendants filed a Praecipe for Termination of Supersedeas. As a result, an Order of Possession was posted on the Property on September 19, 2016.

Notwithstanding the notice of non-renewal sent to and received by Plaintiffs in July 2016, and the natural expiration of the lease on August 31, 2016, Plaintiffs did not vacate the Property. Plaintiffs' failure to vacate the Property led to Defendants' commencement of eviction proceedings in the Pennsylvania Magisterial District Court. As a result, on September 26, 2016, a Recovery of Real Property Hearing Notice was posted on the Property, advising of a hearing to be held in the matter on October 6, 2016.[7]

On April 12, 2017,[8] a hearing was held before Judge Carolyn Carluccio of the Court of Common Pleas of Montgomery County, at which the Judge made the following findings:

> What I have before me is really simple. It's a breach. It's a contract case, okay, and the contract is the lease. And without looking at any other evidence, I read the lease and the lease says that this is a twelve month lease and it began on August 30th of 2012. Then it says it automatically renews for a term of twelve months. So August 31st of 2013, I assume it automatically renewed for another twelve months.
>
> Then there's another box that's checked here and it says that landlord gives tenant at least sixty days written notice before the end date or before the end of a renewal term and then your twelve months – this automatic renewal stops. So then I see a notice of lease termination which the owners of the property sent to you on June 24th of 2016. It's dated – I think there was some testimony it might have gotten to you by June 30th – and that is a little more than sixty days before the termination of your twelve month lease.

---

[6]    Notably, Plaintiffs have not submitted any evidence to dispute Defendants' contention that they received notice of this complaint in early September 2016.

[7]    In their complaint and other filings, Plaintiffs describe this hearing notice as another Order of Possession.

[8]    The precise date of this hearing is unclear from record evidence. A review of the docket entries for the state court proceedings suggests this hearing was held on April 12, 2017.

So they [Defendants] have the right to terminate their lease regardless. It has nothing to do with late payments. It has nothing to do with you as people. They [Defendants] made a decision for their family, whatever it is, that they needed to be out of this lease. They [Defendants] followed the law and, therefore, they [Defendants] have the right – this is their property.

So I am going to order that possession is with the Malaughs; that you [Plaintiffs] need to vacate this premise in twenty-four hours; that you need to pack up and get out and the property goes to the Malaughs.

On July 11, 2017, Plaintiffs were evicted from the Property pursuant to the Order of Judge Carluccio. Defendants sold the Property to a third party on September 1, 2017.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it may "affect the outcome of the suit under the governing law" and a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the burden of identifying portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). That is, the moving party must demonstrate that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Id.*

On the other hand, "with respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Celotex*, 477 U.S. at 325. If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

"After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials' that show a genuine issue of material fact or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute.'" *Davis v. City of Philadelphia,* 2015 WL 4404871, at *2 (E.D. Pa. July 20, 2015) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

To demonstrate the existence of a genuine issue, a party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Likewise, "unsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*,

912 F.2d 654, 657 (3d Cir. 1990). Rather, a party must present evidence sufficient to create a triable issue. *Anderson*, 477 U.S. at 248–49; *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). By evidence, Rule 56 means "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In construing such evidence, however, the Court must draw inferences in the light most favorable to the nonmoving party. *See A.W. v. Jersey City Publ. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007). In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49.

**DISCUSSION**

In their motion for summary judgment, Defendants argue that Plaintiffs have failed to provide evidence sufficient to establish all of the requisite elements of a *prima facie* case for discrimination and retaliation under the FHA. Plaintiffs disagree. This Court will address each of the parties' respective arguments.

*Plaintiffs' FHA Discrimination Claims*

Plaintiffs assert each of their claims pursuant to the Fair Housing Act (the "FHA"), Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§3601-3631. The FHA "was designed to provide nationwide fair housing to minorities who had previously been victims of invidious racial discrimination." *Mitchell v. Cellone*, 389 F.3d 86, 87 (3d Cir. 2004) (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439-40 (1968)). The FHA protects individuals from discrimination

based on race, color, national origin, sex, religion, or familial status in relation to the sale or rental of housing. *See* 42 U.S.C. §3604(a). The FHA also makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise and enjoyment of, any right granted or protected by the FHA. *See* 42 U.S.C. §3617.

Under the FHA, it is unlawful to:

> discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. §3604(b). This provision can be violated by either intentional discrimination or a policy or practice which has a disparate impact upon a protected class. *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 358 F.3d 375, 381 (3d Cir. 2011). Where, as here, the plaintiff's claims are based upon intentional discrimination, but direct evidence is lacking, the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is utilized. *See Griffin v. Miller*, 648 F. App'x 182, 183 (3d Cir. 2016) (finding that the "District Court properly concluded" on summary judgment that plaintiff's claims under the FHA "are governed by . . . *McDonnell Douglas*"); *Koorn v. Lacey Twp.*, 78 F. App'x. 199, 207 (3d Cir. 2003) (applying *McDonnell Douglas* to 42 U.S.C. §§1981, 1982, and FHA claims).[9]

Under this burden-shifting framework, Plaintiffs must first adduce sufficient evidence to establish a *prima facie* case of race-based discrimination. *Newell v. Heritage Senior Living,*

---

[9]     When evaluating discrimination cases under the FHA, courts look to analogous caselaw in employment discrimination cases. In order to evaluate these claims pursuant to the FHA, "courts have typically adopted the analytical framework of their analogues in employment law, including their coordinate burden-shifting analyses once plaintiff has made a prima facie showing of discrimination under a specific claim." *Cmty. Servs. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).

*LLC*, 673 F. App'x 227, 231 (3d Cir. 2016). If such a showing is made, Defendants must then provide a legitimate, non-discriminatory reason for denial of the application. *Id.* The burden then returns to Plaintiffs, who must demonstrate, by a preponderance of the evidence, that Defendants' explanation is mere pretext. *Id.* As to the first element, a *prima facie* case of race-based discrimination in violation of the FHA requires evidence of the following: (1) Plaintiffs are in a protected class; (2) they applied for and were qualified to rent or purchase Defendants' offered property; (3) Plaintiffs' application/offer was rejected; and (4) the housing for which Plaintiffs applied remained available for rent/purchase. *Koorn*, 78 F. Appx. at 207.

When considering these elements, it is undisputed that Plaintiffs are members of a protected class as African Americans. Plaintiffs, however, fail to establish a *prima facie* case of discrimination because they have not presented evidence sufficient to meet the second prong – that they applied for and were qualified to rent and/or purchase the housing at issue. At the outset, in response to Defendants' motion for summary judgment, Plaintiffs failed to present any evidence. Instead, Plaintiffs merely make various statements of fact without providing any of the requisite evidence (even if disputed) to support these asserted facts. This is insufficient to meet their burden on summary judgment. *Katz*, 972 F.3d at 55; *Davis*, 2015 WL 4404871, at \*2.

Regardless, evidence proffered by Defendants (and not matched by any contrary evidence) shows that Plaintiffs were not financially qualified to either continue renting the Property or to purchase it. For example, as of at least November 24, 2015, Plaintiffs were in arrears on their rent for the Property in the amount of $5,700, resulting in a judgment entered against them in that amount plus costs in the Court of Common Pleas for Montgomery County. Plaintiffs' failure to pay their rent ultimately led Defendants to not renew the lease and then to seek eviction after Plaintiffs refused to vacate the Property, a legal process in which Defendants

were ultimately successful.  In addition, Defendants point to Plaintiffs' application to proceed in this matter *in forma pauperis* ("IFP") as uncontradicted evidence that Plaintiffs were not financially qualified to either rent or purchase the Property.  (*See* ECF 3).  In that application, Plaintiffs verify that they were unable to pay the costs of these proceedings, including paying the requisite $400 filing fee.  (*Id*.).   More significantly, Plaintiffs also represented that they only made on average $1,200 a month during the preceding twelve months (November 2015 through November 2016).  (*Id*.).  The rent for the Property for which they sought to renew their lease was $3,100 month.  Further, in light of Plaintiffs' financial situation represented in their own IFP application, it does not appear they were in the financial condition to either rent or purchase the Property.

In addition, with respect to Plaintiffs' claim for discriminatory refusal to sell, Plaintiffs have not offered any record evidence showing that they made an offer to purchase the home.  To the contrary, various evidence attached to Defendants' filings suggests that while Plaintiffs hoped to one day be able to purchase the home, they were unable during the relevant time period to make a purchase offer.   Likewise, Plaintiffs have not shown, and cannot show, that their offer to purchase was rejected.  Having never made an offer to purchase the Property, Plaintiffs' discrimination claim premised on Defendants' alleged discriminatory decision to not sell them the Property fails.

With respect to Plaintiffs' failure-to-rent claim, Plaintiffs have also failed to present evidence to meet the final element, *i.e.*, that the Property remained available for rent after Defendants decided not to renew Plaintiffs' lease.  The undisputed evidence shows that the Property was sold less than two months after Plaintiffs were finally evicted in July 2017.  As

such, the Property did not remain available for rent. Accordingly, Plaintiffs' failure-to-rent claim fails.

In sum, Plaintiffs have failed to present record evidence from which a reasonable factfinder could find that they met the *prima facie* elements of their discrimination claims. Accordingly, Plaintiffs' discrimination claims fail, and Defendants are entitled to summary judgment.

As argued by Defendants, Plaintiffs' discrimination claims also fail because Plaintiffs have not presented sufficient evidence to rebut Defendants' legitimate, non-discriminatory reasons for denying Plaintiffs' rental application and/or purchase offer. This Court agrees.

Once a *prima facie* case has been established, and the "relatively light" burden of demonstrating a legitimate, non-discriminatory reason for denial of housing is met, it is incumbent upon Plaintiffs to show pretext "by a preponderance of the evidence." *Newell*, 673 F. App'x. at 231 (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). This requires evidence which allows the finder of fact to reasonably infer that the reason for the denial of housing was either a *post hoc* fabrication or did not actually motivate the denial. *Id.* (citing *Fuentes*, 32 F.3d at 764). A plaintiff can make such showings by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions'" in the proffered legitimate reason that a reasonable finder of fact could rationally determine that the defendant's legitimate, non-discriminatory reason is unworthy of credence. *Id.* (quoting *Fuentes*, 32 F.3d at 765).

Here, Defendants have proffered multiple legitimate, non-discriminatory reasons for their refusal to renew the lease and/or sell the Property to Plaintiffs. As described above, Plaintiffs had a history of failing to pay their rent on time. Indeed, in November 2015, a judgment was

entered against Plaintiffs in the amount of $6,042.10, which included $5,700 in rental arrears. Though Defendants could have evicted Plaintiffs at that time pursuant to a court order, they chose instead to give Plaintiffs additional time to pay the rent arrears and to remain in the Property. Notwithstanding, Plaintiffs did not fully pay the unpaid/untimely rent until February 24, 2016, when they did so in order to perfect their appeal of the judgment. In addition, Defendants themselves had a legitimate financial reason to sell their Property, rather than continuing to rent it, as they wished to purchase another home in Virginia where they had moved but were renting themselves, and wished to avoid a significant increase in the monthly mortgage payment on the Property that was scheduled to balloon in October 2017. Plaintiffs have presented no record evidence to refute these non-discriminatory reasons for Defendants' purported refusal to renew the lease or to sell the Property to Plaintiffs. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' discrimination claims.

### *Plaintiffs' Retaliation Claim*

Plaintiffs also assert a claim for retaliation under the FHA. Specifically, Plaintiffs contend that Defendants unlawfully retaliated against them after Plaintiffs filed a complaint with the PHRC on August 30, 2016, by having an Order of Possession sent to Plaintiffs' home and later having the same notice (or a notice of a scheduled court hearing related thereto) posted on Plaintiffs' door.

Retaliation claims under the FHA are also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Madison v. Phila. Housing Auth.*, 2010 WL 2572952 (E.D. Pa. June 23, 2010) (citing *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001); *Campbell v. Robb*, 162 F. App'x 460 (6th Cir. 2006)). Under the *McDonnell Douglas* burden-shifting framework, as applied to FHA retaliation claims, Plaintiffs must first establish a *prima*

*facie* case of retaliation under §3617 by demonstrating that: (1) they engaged in a protected activity; (2) Defendants subjected Plaintiffs to an adverse action; and (3) a causal link existed between the protected activity and the adverse action. *Walker*, 272 F.3d at 1128. If Plaintiffs establish a *prima facie* case, then the burden shifts to Defendants to articulate a "legitimate nondiscriminatory reason for its decision." *Id*. If Defendants articulate such a reason, Plaintiffs bear the ultimate burden of demonstrating that the reason was "merely a pretext for a discriminatory motive." *Id*.

Here, it is undisputed that Plaintiffs engaged in a protected activity when they filed a complaint with the PHRC on August 30, 2016. However, Defendants did not receive any notice of that complaint (protected activity) until sometime in early September 2016, ***after*** the Orders of Possession were posted on Plaintiffs' door. The posting of the Orders of Possession on Plaintiffs' rental home was the result of Defendants' filing of a Praecipe for Termination of Supersedas with the Court of Common Pleas of Montgomery County, on August 31, 2016, days before Defendants received any notice of Plaintiffs' filing of a complaint with the PHRC. Moreover, Defendants' initiation of the eviction proceedings was the result of Plaintiffs' refusal to vacate the Property at the expiration of the lease. Indeed, a state court judge determined that Plaintiffs had no right to remain in the Property, and they have since been evicted. In light of this undisputed chronology of events, Plaintiffs have not shown and cannot show a causal link between Plaintiffs' protected activity and Defendants' purported adverse action. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' retaliation claims.[10]

---

[10]    In their response to Defendants' motion for summary judgment, Plaintiffs argue that they have somehow presented evidence sufficient to allow claims under 42 U.S.C. §§1981, 1982, and 1983 go to trial. Plaintiffs, however, never asserted any such claims in their complaint. As such, Plaintiffs' arguments with respect to these unasserted claims will not be addressed.

**CONCLUSION**

For the reasons stated herein, Plaintiffs have failed to present evidence sufficient to meet their summary judgment burden on each of their claims. Accordingly, Defendants' motion for summary judgment is granted. An Order consistent with this Memorandum Opinion follows.


*NITZA I. QUIÑONES ALEJANDRO, J*